Kathleen H. INNISS

v.

METHOT BUICK–OPEL, INC.

Supreme Judicial Court of Maine.

Argued Jan. 8, 1986.

Decided March 5, 1986.

Smith & Elliott, Dana E. Prescott, (orally), Saco, for plaintiff.

Richard E. Valentino, (orally), Saco, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

Kathleen Inniss appeals from the judgment of the Superior Court, York County, directing a verdict for the defendant Methot Buick-Opel, Inc. (Methot) on Count VI of her complaint, alleging that Methot violated the Unfair Trade Practices Act (UTPA), 5 M.R.S.A. §§ 206–214 (1979 & Supp.1985–1986), in the sale of a car to her. She also contends that the court erred in granting Methot a recoupment that reduced the jury award of damages to her on Counts I and III of her complaint, pursuant to 11 M.R.S.A. §§ 2–608, 2–711(1) (1964).[1] Methot cross-appeals, contending that the jury verdict on the claim for return of the purchase price of the car was not supported by sufficient evidence. For the reasons herein set forth, we deny the cross-appeal and vacate the judgment with direction to the Superior Court to enter a judgment for Inniss in the amount of the jury verdict.

## I. Statement of Facts

In September, 1982, Inniss and Methot entered into an agreement for the purchase and sale of a 1982 Buick Skylark. Inniss was aware that Methot had used the car as a demonstrator and that it had been driven nearly 6,000 miles. She paid a purchase price equivalent to that for a new car and received a new car warranty valid for 12 months or 12,000 miles. Both parties testified to their understanding that the warranty obligated Methot to repair any defect during the warranty period.

Unknown to Inniss, the car had a history of eleven repair orders prior to the sales agreement. The repair orders do not indi-

---

1. The other six counts of the complaint were dismissed prior to or during the trial and are not of issue on this appeal.

cate that problems described were not remedied to the satisfaction of the repair personnel. Methot never informed Inniss of the existence of any defects or of the repair orders. The corporation's president testified that he does not instruct his sales personnel to disclose pre-purchase repair orders. On a customer's request he would disclose this information but could not recall any customer making such a request.

Shortly after the purchase and sales agreement, Inniss encountered a series of problems that she reported to Methot. The horn, rear window defogger, throttle, and brakes were successfully repaired, generally after more than one visit to Methot. Other conditions were not remedied prior to the end of the warranty period: a malfunctioning temperature gauge, poor starting, skipping and flooding of the engine, vibration in the front end, and flashing of the directional indicators in both directions when use of the turn signal was attempted. The engine problems and the malfunctioning of the directional indicators occurred intermittently. In addition, the purchase agreement had provided that the car was to receive a rustproofing treatment. Evidence at trial showed that much of the car had not been rustproofed, while other areas had "spotty" rustproofing. While Methot twice sanded and repainted certain surfaces, the color used did not match the original paint, and apparent foreign matter under the original paint that caused bubbles on the surface was not completely removed.

Between September and December, 1982, Inniss brought the car back to Methot on eight occasions. The repair orders disclose that Methot personnel attempted to remedy the problems that Inniss reported. The repairs were made without cost to Inniss except for one billing for an oil change. On each of these occasions Methot loaned Inniss a car to use without cost to her while her own was being repaired. After a visit on December 15 when the car registered 10,636 miles, Inniss did not bring the car to Methot until March 10, 1983, when it registered 19,250 miles. On that occasion Methot replaced the alternator belt and charged the battery, billing Inniss $29.85 for these services. Inniss did not again bring the car to Methot. On June 6, 1983, when the car registered 20,000 to 25,000 miles, Inniss sent a letter to Methot, detailing the problems with the car and requesting "restitution." Although Methot received the letter, it never responded.

Inniss subsequently filed suit, alleging, *inter alia,* breach of express and implied warranties, substantial impairment of value justifying revocation of acceptance and return of the purchase price, and violation of the UTPA.

## II. *Unfair Trade Practices Act*

We first address the contention of Inniss that the court erred in granting a directed verdict in favor of Methot on Count VI of her complaint claiming that Methot violated the UTPA.

With respect to a directed verdict, we have previously stated:

> [T]he presiding Justice should direct a verdict only sparingly, as the exception rather than the rule. Only if the correctness of directing a verdict appears so clear to the presiding Justice that all reasonable doubts of possible error or uncertainty have been removed in his mind should he grant it.

*Moore v. Fenton,* 289 A.2d 698, 700 n. 1 (Me.1972), *quoted in Butler v. Poulin,* 500 A.2d 257, 260 (Me.1985). Despite this policy disfavoring directed verdicts, there are circumstances when the direction of a verdict is appropriate. A directed verdict must be granted when, after viewing the evidence with all reasonable inferences arising therefrom in the light most favorable to the plaintiff, a contrary verdict could not be sustained. *Seiders v. Testa,* 464 A.2d 933, 935 (Me.1983). To avoid a directed verdict, a plaintiff must establish a prima facie case of the elements of the action. *See Department of Human Services v. Earle,* 481 A.2d 175, 178–79 (Me. 1984).

■ The UTPA declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or business." 5 M.R. S.A. § 207 (1979).[2] The Act was amended in 1973 to include a private right of action. P.L.1973, ch. 251 (codified as amended at 5 M.R.S.A. § 213 (1979 & Supp.1985–1986).[3] As we recognized a half decade ago:

> The scope of the Unfair Trade Practices Act has yet to be clearly defined by this Court; its limits can best be drawn on a case-by-case basis in which the issues are sharply focused in light of specific fact situations.

*Edwards v. Black,* 429 A.2d 1015, 1016–17 (Me.1981). The conduct against which the complaint is directed should have some attribute of unfairness or deception to trigger the procedures of the UTPA. *State ex rel. Tierney v. Ford Motor Co.,* 436 A.2d 866, 874 (Me.1981). In the proper circumstances a defendant's failure to honor statutory warranties may constitute evidence of a violation of the UPTA, but a breach of warranty does not constitute a *per se* violation. *Id.* at 873–74; *Banville v. Huckins,* 407 A.2d 294, 298 (Me.1979).

In the instant case the court found that Inniss had failed to establish a prima facie showing of an unfair or deceptive act within the meaning of the UTPA. On appeal Inniss argues on three grounds that she established a prima facie case. We disagree.

■ First, Inniss contends Methot misrepresented the car as new when it was in fact a demonstrator model registering nearly 6,000 miles. From her own testimony, however, it is clear that Methot informed Inniss of the use of the car as a demonstrator and that Inniss was aware of the registered mileage. Inniss's receipt of a new car warranty for 12,000 miles in addition to the 6,000 miles registered also undermines her contention of misrepresentation. Thus, Inniss failed to make a prima facie showing of misrepresentation.

■ Second, Inniss contends Methot failed to disclose numerous and substantial defects of which it was aware. The evidentiary basis for this contention is the existence of the eleven undisclosed pre-purchase repair orders. A careful examination of these orders does not disclose, however, that Methot, prior to the purchase and sales agreement, identified problems with the car that were not remedied to the satisfaction of the repair personnel. Thus, Inniss failed to establish that Methot was aware of substantial defects still existing at the time of the sales agreement.

■ Finally, Inniss contends Methot both failed and refused to complete repairs properly during the warranty period. The failure to successfully repair may constitute a breach of express or implied warranties but, as we have indicated, a breach of warranty does not *per se* constitute a violation of the UTPA. Inniss's contention of a refusal to repair is not borne out by the repair orders and other evidence admitted at trial. Between September and Decem-

---

**2.** Section 207 provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful.
> **1. Intent.** It is the intent of the Legislature that in construing this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

**3.** Section 213(1) as amended provides:

> Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 or by any rule or regulation issued under section 207, subsection 2 may bring an action either in the Superior Court or District Court for restitution and for such other equitable relief, including an injunction, as the court may deem to be necessary and proper. There shall be a right to trial by jury in any action brought in Superior Court under this section.

*See generally* Note, *The Private Cause of Action under Maine's Unfair Trade Practices Act,* 35 Me.L.Rev. 223 (1983).

ber, 1982 Inniss brought the car to Methot on eight occasions. Methot attempted to remedy the reported problems without billing Inniss for the services and materials, and while providing her with another car for her temporary use. As of the final December visit the warranty was still valid for an approximate additional 7,400 miles. Nevertheless, Inniss did not bring the car to Methot again until March, 1983 when the warranty had expired. The March, 1983 repair order discloses a starting problem that may well reflect normal wear and tear on the car and that required relatively minor repairs. Thus the evidence does not support a contention that Methot refused to complete repairs of defects reported to it or engaged in dilatory or half-hearted efforts at repairs during the warranty period.

Because Inniss failed to establish an adequate evidentiary basis for any of her three contentions, we need not decide whether any of these contentions, alone or in combination, would, if adequately established, constitute a prima facie case under the UTPA. We hold that the court did not err by directing a verdict in favor of Methot on Count VI of Inniss's complaint.

### III. *Recoupment*

In its answer to questions submitted on a special verdict form, the jury found that Inniss was entitled to a return of the purchase price and damages for breach of express warranty and consequential and incidental damages, and awarded $9,505 as the total damages sustained by her. Purporting to apply its equitable powers under 11 M.R.S.A. § 1–103 (1964), the court stated its intention to reduce the verdict by the value of the use of the car by Inniss. Accordingly, the court ordered a "set-off" based on the value of the car as of June,

1983, the date of Inniss's restitution letter, reduced the jury award by $3,105, and entered a judgment for Inniss in the amount of $6,400, plus interest and costs. Inniss contends that the court erred in reducing the award because Methot had waived any entitlement to a reduction. We agree.

■ The court granted Methot a recoupment. A "set-off" is a demand that the defendant has against the plaintiff arising out of a transaction extrinsic to the plaintiff's cause of action whereas a "recoupment" is a reduction of part of the plaintiff's damages because of a right in the defendant arising out of the same transaction. *Zweck v. D P Way Corp.*, 70 Wis.2d 426, 433–34, 234 N.W.2d 921, 925 (1975); 2A Moore, *Federal Practice* § 8.27[3] at 8–191 (2d ed. 1985).

In cases decided prior to the adoption of the Maine Rules of Civil Procedure, we have repeatedly stated that the availability of the defense of recoupment requires that notice in some form be given to the plaintiff. *Fogg v. Hall*, 133 Me. 322, 324, 178 A. 56, 57 (1935); *Peterson Oven Co. v. Fickett*, 121 Me. 413, 419, 117 A. 575, 578 (1922).

■ The Maine Rules of Civil Procedure imposes a pleading requirement upon the party seeking recoupment. Under M.R.Civ.P. 8(c) a party is required to "set forth affirmatively … any … matter constituting an avoidance or affirmative defense."[4] Recoupment is encompassed under the literal language of this rule because, rather than denying the plaintiff's claim, it avoids or affirmatively defends against it.

■ The civil procedural rules also permit the bringing of counterclaims. *See*

---

**4.** M.R.Civ.P. 8(c) provides:

(c) **Affirmative Defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

M.R.Civ.P. 13. Courts construing the corresponding federal rules have permitted recoupment as a counterclaim pursuant to Rule 13 or as an affirmative defense pursuant to Rule 8(c). *See Basic Boats, Inc. v. United States*, 311 F.Supp. 596, 598 (E.D. Va.1970); *Desjardins v. Desjardins*, 193 F.Supp. 210, 215 (E.D.Ky.1961); Moore, *supra*, § 8.27[3] at 8-191–8-192.

In the instant case Methot did not plead entitlement to recoupment as an affirmative defense or counterclaim. Its pretrial memorandum specifically disclaimed any demand for damages. Ordinarily an affirmative defense is deemed waived if not raised by a sufficient pleading at the trial level. *See Blue Spruce Co. v. Parent*, 365 A.2d 797, 801 (Me.1976) (affirmative defense waived if not pleaded); M.R.Civ.P. 8(a) (a counterclaim "shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled"). When, however, an issue not raised by the pleadings is tried by express or implied consent of the parties the issue shall be treated as if raised in the pleadings. M.R.Civ.P. 15(b). Notice of the non-pleaded issue must be given clearly during the course of trial. *Blue Spruce Co.*, 365 A.2d at 802. Here, neither party produced any evidence at trial of the value of Inniss's use of the car nor its value as of June, 1983. In these circumstances "the unavoidable conclusion" is that the issue of recoupment "was not tried in the trial court by express or implied consent of the parties within the meaning of Rule 15(b)." *Id.* at 803.

11 M.R.S.A. § 1-103 does not negate Methot's waiver of recoupment. This section of the Maine Commercial Code provides that "principles of law and equity" not displaced by the Code shall supplement its provisions.[5] *See Schiavi Mobile Homes, Inc. v. Gironda*, 463 A.2d 722, 724 (Me.1983). We see no indication that the Code purports to displace the civil procedural rules. We note that the Maine Rules of Civil Procedure require either affirmative pleading or pleading with particularity of several "principles of law and equity" listed in section 1-103.[6] We hold therefore that section 1-103 does not provide the court with authority to allow the affirmative defense of recoupment that was neither pleaded by Methot nor tried by express or implied consent of the parties.

### IV. *Sufficiency of the Evidence*

In its cross-appeal Methot challenges the sufficiency of the evidence to support the jury finding that Inniss was entitled to revoke her acceptance of the car. When an appellant challenges the sufficiency of the evidence, "we will not overturn a jury verdict that is supported by any credible evidence, if the jury could rationally reach the result it did." *Thurber v. Bill Martin Chevrolet, Inc.*, 487 A.2d 631, 633 (Me. 1985).

11 M.R.S.A. § 2-608 (1964) allows for revocation of acceptance of goods. As applied to the instant case, section 2-608 required Inniss to show: 1) a non-conformity causing a substantial impairment of the value of the car to her, 2) her difficulty of discovering non-conformity before acceptance, 3) revocation within a reasonable time, 4) revocation prior to any substantial change in the condition of the car not caused by its own defects, and 5) notice of

---

5. In full, section 1-103 provides:
   Unless displaced by the particular provisions of this Title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

6. For example, duress, estoppel, and discharge in bankruptcy constitute defenses that must be affirmatively pleaded. M.R.Civ.P. 8(c). Circumstances constituting fraud or mistake shall be stated with particularity. M.R.Civ.P. 9(b). For the text of section 1-103, see n. 5 *supra*.

revocation to Methot.[7] Methot challenges the jury's implicit findings as to the first and fourth elements listed. We will consider each of these elements in turn.

 *Substantial impairment of value:* Section 2–608(1) permits revocation when, *inter alia,* the non-conformity substantially impaired the value of the car *to the buyer.* "Any defect that shakes the buyer's faith or undermines his confidence in the reliability and integrity of the purchased item is deemed to work a substantial impairment of the item's value and to provide a basis for revocation of the underlying sales agreement." *McCullough v. Bill Swad Chrysler-Plymouth, Inc.,* 5 Ohio St.3d 181, 186, 449 N.E.2d 1289, 1294 (1983). *Accord Asciolla v. Manter Oldsmobile-Pontiac, Inc.,* 117 N.H. 85, 88, 370 A.2d 270, 274 (1977); *Zabriskie Chevrolet, Inc. v. Smith,* 99 N.J.Super. 441, 457, 240 A.2d 195, 205 (1968). Accordingly, repeated stalling of the engine and persistent peeling of the paint have each been found to constitute substantial impairment of the value of an automobile. *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 354 (Minn.1977) (stalling); *Pavesi v. Ford Motor Co.,* 155 N.J.Super. 373, 376–79, 382 A.2d 954, 955–57 (1978) (peeling).

■ In the instant case there was evidence of defective paint, inadequate rust-proofing, poor starting, electrical malfunctioning and front end vibration. These constituted defects that appeared soon after the purchase of the car and that persisted despite efforts to remedy them. A jury could rationally find a substantial impairment of value.

*Revocation prior to substantial change in condition*: The evidence of revocation

admitted at trial included the June, 1983 restitution letter and Methot's receipt of it. No evidence was presented at trial that demonstrated any change in the condition of the car except for the evidence of mileage: 6,000 miles at the time of purchase, 19,250 as of Inniss's last visit to Methot in March, 1983, and some 20,000–25,000 as of the June letter. Less than nine months elapsed between the sales agreement and the revocation. No evidence was presented as to any misuse or damage of the car by Inniss. On this evidence the jury rationally could have found that no substantial change in the condition of the car had occurred prior to revocation.

Accordingly, we deny the cross-appeal.

The entry is:

Cross-appeal denied. Order for directed verdict on Count VI affirmed. Judgment on Counts I and III vacated. Remanded to the Superior Court with directions that judgment on Counts I and III for Kathleen H. Inniss be entered in the amount of the jury verdict.

All concurring.

---

7. Section 2–608 provides in pertinent part:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

....

(b) Without discovery of such nonconformity, if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.