STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         BUSINESS AND CONSUMER COURT
                                        LOCATION: PORTLAND
                                        DOCKET NO. BCD-CV-2017-44 ✔

PNM CONSTRUCTION, INC.,          )
                                 )
            Plaintiff,           )      ORDER ON DEFENDANT FARM
                                 )      CREDIT EAST, ACA'S MOTION FOR
      v.                         )      SUMMARY JUDGMENT
                                 )
LMJ ENTERPRISES, LLC, et al.,    )
                                 )
            Defendants.          )

Pending before the Court is Defendant/Counterclaim-Plaintiff Farm Credit East, ACA's ("Farm Credit") motion for summary judgment in its favor on Count I of its Counterclaim and Count II and Count V of Plaintiff PNM Construction, Inc.'s ("PNM") Second Amended Complaint (the "Complaint"). Pursuant to its discretionary authority the Court elected to decide the motion without holding oral argument. M.R. Civ. P. 7(b)(7).

## FACTS

Farm Credit is a corporation organized under the Farm Credit Act[1] of 1971 with a place of business in Auburn, Maine. (Def's Supp'g S.M.F. ¶ 1.) LMJ Enterprises, LLC, ("LMJ") is a limited liability company that owned a mill building (the "Mill") in Lincoln, Maine. (*See* Def's Supp'g S.M.F. ¶¶ 4, 5.) PNM is a Maine corporation with a place of business in Presque Isle, Maine. (Def's Supp'g S.M.F. ¶ 2.) Steve McHatten is the president and sole owner of PNM. (Def's Supp'g S.M.F. ¶ 3.)

As security for loans Farm Credit made to LMJ, Farm Credit took a security interest in all of LMJ's real and personal property. (Def's Supp'g S.M.F. ¶ 4.) As such Farm Credit was listed

---

[1] The Court assumes that Farm Credit's reference to the "Farm Credit Action of 1971" was a typographical error.

1

as loss payee on LMJ's insurance policies issued by Pennsylvania Lumbermens Mutual Insurance Company (the "Policy"). (Def's Supp'g S.M.F. ¶ 4.)

On January 29, 2016, a fire damaged the Mill. (Def's Supp'g S.M.F. ¶ 5.) LMJ filed an insurance claim on the Policy for the damage, using PNM's estimates and invoices as the basis for the calculations. (Pl's Opp'g S.M.F. ¶¶ 1-2.)[2] PNM provided labor and furnished materials to repair the Mill and completed that work in April 2016. (Def's Supp'g S.M.F. ¶ 6.) Farm Credit was aware that PNM performed this work on the Mill. (Pl's Opp'g S.M.F. ¶ 7.)

On May 20, 2016, Mr. McHatten went to Farm Credit's business office in Presque Isle, Maine and signed a lien waiver and certificate (the "Waiver") on behalf of PNM relating to the construction work it did at the Mill. (Def's Supp'g S.M.F. ¶ 7; Def's Ex. A1.)[3] Farm Credit's Vice President, Peter Hallowell, was present when Mr. McHatten signed the Waiver. (Def's Supp'g S.M.F. ¶ 7.) Farm Credit delivered a check for $100,000 to PNM when Mr. McHatten executed the Waiver. (Def's Supp'g S.M.F. ¶ 9.) This was from the proceeds of a progress payment that Pennsylvania Lumbermens Mutual Insurance Company paid to LMJ to compensate for repair work performed on the Mill. (Pl's Opp'g S.M.F. ¶¶ 3, 5.)[4] As of May 20, 2016, Farm Credit was aware that PNM had issued invoices in excess of $100,000. (Pl's Opp'g S.M.F. ¶ 8.) There is a factual

---

[2] Farm Credit purports to deny or qualify these facts, but does not "support each denial or qualification by a record citation" as required by M.R. Civ. P. 56(h)(3)-(4). Farm Credit's objections to PNM's opposing statement of material facts are overruled.

[3] Farm Credit has submitted two exhibits labeled A in support of its motion for summary judgment; the first is a copy of the Waiver attached to Farm Credit's statement of material facts and the second is an excerpt from the deposition of Mr. McHatten attached to Farm Credit's reply statement of material facts. The Court refers to these exhibits as A1 and A2, respectively. PNM's objection to evidence cited as the deposition of Mr. McHatten in Farm Credit's statement of material facts is overruled because Farm Credit attached Def's Ex. A2 to its reply and PNM admitted to all the facts in the statement of material facts that cite Mr. McHatten's deposition.

[4] Farm Credit purports to deny or qualify these facts, but the record citation does not controvert the facts stated and merely confirms that "[c]ontemporaneous with the execution of the Waiver, Farm Credit delivered a check for $100,000" to PNM. (Hallowell Aff. ¶ 8.) M.R. Civ. P. 56(h)(4). Furthermore, in its memorandum in support of its motion, Farm Credit concedes that the "payment of $100,000 [was] for [PNM's] work at the mill." (Def's Mot. Summ. J. 1.)

2

dispute as to whether Farm Credit obtained the benefit of PNM's repair work on the Mill. (Pl's Opp'g S.M.F. ¶¶ 9-10.)

PNM has sued Farm Credit and others under an unjust enrichment theory for the work it performed on the Mill and for which it has not been paid. (Pl's Compl. ¶¶ 41-47.) Farm Credit has counterclaimed against PNM for breach of contract arising out of PNM's violation of the Waiver. (Def's Countercl. ¶¶ 15-19.)

## STANDARD OF REVIEW

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). A genuine issue exists where the jury would be required to "choose between competing versions of the truth." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040. "Summary judgment is no longer an extreme remedy." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

## DISCUSSION

I.    Farm Credit's Counterclaim

Farm Credit's primary argument in support of its motion for summary judgment on its Counterclaim is that on May 20, 2016, in exchange for the payment of $100,000 for its work on the Mill, PNM agreed "to indemnify, defend, and hold . . . Farm Credit harmless from any and all claims . . . whatsoever based upon work done and/or materials furnished in connection with this construction by [PNM] . . . through the date" of May 20, 2016. (Def's Mot. Summ. J. 1.) By filing the instant lawsuit, PNM has sued Farm Credit for work it completed before May 20, 2016.

3

In order to obtain relief for breach of contract, a plaintiff must establish that there is an agreement, the defendant is in material breach, and the plaintiff has been damaged. *Tobin v. Barter*, 2014 ME 51, ¶¶ 9-10, 89 A.3d 1088. "A contract exists where the parties 'mutually assent to be bound by all its material terms . . . [and] the contract is sufficiently definite.'" *McClare v. Rocha*, 2014 ME 4, ¶ 16, 86 A.3d 22 (quoting *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625). An unambiguous contract must be construed consistent with its plain meaning. *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989.

PNM does not dispute that Farm Credit intended to enter into a binding contract with PNM upon the execution of the Waiver and delivery of the $100,000 check, or that PNM agreed to the indemnity provision of the Waiver. (*See* Pl's Response to Def's Supp'g S.M.F. ¶¶ 11-12.) PNM likewise does not dispute that it commenced the instant litigation seeking an award of damages against Farm Credit for its work on the Mill completed prior to May 20, 2016. (*See* Pl's Response to Def's Supp'g S.M.F. ¶ 14.) However, PNM does not concede that Farm Credit has been or will be harmed by PNM's breach of the indemnity provision of the Waiver in any amount. (*See* Pl's Response to Def's Supp'g S.M.F. ¶ 18.)

PNM's principal argument in opposition to Farm Credit's motion for summary judgment on its Counterclaim is that the indemnity provision of the Waiver is unenforceable if Farm Credit is determined to have unjustly enriched itself at PNM's expense. (Pl's Opp'n to Def's Mot. Summ. J. 6.) PNM makes this argument by analogizing to *Emery Waterhouse Co. v. Lea*, 467 A.2d 986 (Me. 1983) and *Gatley v. United Parcel Serv., Inc.*, 662 F. Supp. 200 (D. Me. 1987).

In *Emery Waterhouse*, the plaintiff tenant sued the defendant landlord and others for damages resulting from their collective negligence. 467 A.2d at 989. The defendant landlord counterclaimed against the plaintiff on the basis of its right to indemnity under the lease contract.

4

*Id.* Under the indemnity provision in that case, the plaintiff was obligated to indemnify the defendant landlord from any and all damages to its property arising from or out of any occurrence in, upon, or at the leased premises. *Id.*, 467 A.2d at 992. The defendant landlord argued that such a broad and comprehensive provision afforded it with complete indemnity, including indemnity for damages caused by its own negligence. *Id.*

The Law Court disagreed with the defendant, holding that while indemnity clauses to save a party harmless from damages due to negligence are lawful and not against public policy, such clauses must explicitly provide for such indemnification:

> But when purportedly requiring indemnification of a party for damage or injury caused by that party's own negligence, such contractual provisions . . . are construed strictly against extending the indemnification to include recovery by the indemnitee for his own negligence . . . . It is only where the contract in its face by its very terms clearly and unequivocally reflects a mutual intention on the part of the parties to provide indemnity for loss caused by negligence of the party to be indemnified that liability for such damages will be fastened on the indemnitor[.]

*Id.*, 467 A.2d at 993 (citations omitted). In *Gatley*, the U.S. District for the District of Maine reasoned that "[t]he rule in *Emery-Waterhouse*, that a contract will not be interpreted to provide for indemnity for a party's own negligence unless the contract clearly and unequivocally so provides, would appear to apply *a fortiori* to contracts assertedly providing for indemnity for a party's own intentional torts." 662 F. Supp. at 203. The *Gately* court therefore granted summary judgment to the purported indemnitor on that issue. *Id.*

As Farm Credit points out, the rule from *Emery-Waterhouse*, even as expanded by *Gatley*, does not directly apply in this case: unlike in those two cases, where the plaintiffs sought damages in tort, PNM seeks recovery from Farm Credit exclusively under the equitable doctrine of unjust enrichment. In order for PNM to prevail on a claim for unjust enrichment, it must prove that (1) it

5

conferred a benefit on the other party, (2) the other party had "appreciation or knowledge of the benefit," and (3) that the "acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Howard & Bowie, P.A. v. Collins,* 2000 ME 148, ¶ 13, 759 A.2d 707 (citing *June Roberts Agency v. Venture Properties,* 676 A.2d 46, 49 (Me. 1996)). Crucially, the defendant's misconduct, or lack thereof, is not an essential element to recovery under an unjust enrichment theory. *A.F.A.B., Inc. v. Town of Old Orchard Beach,* 610 A.2d 747, 750 (Me. 1992). *See also* Horton & McGehee, *Maine Civil Remedies* §7-5(b) at 179 (4 ed. 2004).

Furthermore, to the extent that the defendant's misconduct (or lack thereof) is nonetheless relevant to the issue of whether the enrichment was unjust, *see id.*, PNM has not introduced any evidence of wrongful behavior on the part of Farm Credit in its opposing statement of material facts.[5] In argument in its opposition to Farm Credit's motion for summary judgment, PNM conflates two distinct concepts: (1) the requirement that a defendant's acceptance or retention of a benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value, and (2) the relevant—but not necessary—determination of whether the defendant's behavior was wrongful. (Pl's Opp'n to Def's Mot. Summ. J. 5-6.) To the extent that PNM would argue that this is a distinction without a difference, our Law Court disagrees. It explicitly recognizes that defendant wrongdoing is relevant to, but not a required element of, the determination of whether a defendant's retention of a benefit is inequitable for purposes of

---

[5] Even if this Court were inclined to entertain PNM's argument that the rule from *Emery-Waterhouse* should be expanded to invalidate indemnity provisions that purport to insulate the indemnitee from wrongful (as opposed to tortious) behavior, PNM has not presented any facts on which to base a finding that Farm Credit has acted wrongfully. At best, Pl's Opp'g S.M.F. ¶¶ 7-8, 10 could support the inference that Farm Credit's refusal to consent to payment of further insurance proceeds to PNM was wrongful. *See Lever v. Acadia Hosp. Corp.,* 2004 ME 35, ¶ 2, 845 A.2d 1178. However, to the extent this raises a genuine factual dispute, the issue is not material. *See Lougee Conservancy,* 2012 ME 103, ¶ 11, 48 A.3d 774. PNM does not connect the inference of this wrongful act to the final element of recovery under unjust enrichment: the inequity of the defendant's retention of the benefit; in this case, the value the work added to the Mill when it was sold at auction.

6

applying the doctrine of unjust enrichment. *A.F.A.B., Inc.*, 610 A.2d at 750; *accord* Horton & McGehee, *Maine Civil Remedies* §7-5(b) at 179 (4 ed. 2004).

In effect, PNM asks this Court to broaden the rule from *Emery-Waterhouse*; the rule is stated very narrowly in that case, referring exclusively to indemnity provisions which purport to require indemnification for loss caused by the *negligence* of the indemnitee. *See Emery-Waterhouse*, 467 A.2d at 993. There is no authority extending the requirement of "clear[ ] and unequivocal[ ] . . . mutual intention . . . to provide indemnity for loss caused by" an inequitable result, or even "wrongful"—as opposed to "tortious"—conduct. *See id. Cf. Gatley*, 662 F. Supp. at 203. The Court declines to extend the *Emery-Waterhouse* rule in the absence of such authority, but also for practical reasons. Our Law Court's narrow statement of the rule in *Emery-Waterhouse* reflects the general principle of freedom to contract. *See State Farm Mut. Auto. Ins. Co. v. Koshy*, 2010 ME 44, ¶ 9, 995 A.2d 651 ("parties have 'considerable latitude' in their freedom to contract") (citation omitted). It is undisputed that PNM intended to be bound by the Waiver. Under current Maine law, had Farm Credit and PNM wished to insulate Farm Credit from claims arising from Farm Credit's own negligent or otherwise tortious acts, the Waiver would have been required to state that mutual intentional clearly and unequivocally. The broad language used by the Waiver is not otherwise unenforceable. To conclude otherwise would beg the question of what PNM thought it agreed to when it read that language and agreed to be bound by it by signing the Waiver.

In sum, the facts presented in this case distinguish it from *Emery-Waterhouse* and *Gatley* because there is no evidence in the record that Farm Credit acted negligently or otherwise tortiously. The Court thus concludes that the indemnification provision of the Waiver is enforceable against PNM with regards to its claim against Farm Credit for unjust enrichment.

The parties seem to agree that this conclusion disposes of Farm Credit's instant motion for summary judgment on its Counterclaim. Because the undisputed facts establish that the parties intended to enter into a binding contract upon the execution of the Waiver and delivery of the $100,000 check and that PNM agreed to the indemnity provision of the Waiver; that PNM has breached that agreement by failing to indemnify, defend, and hold Farm Credit harmless from any and all claims based upon work done and materials furnished in connection with its work on the Mill before May 20, 2016 by seeking recovery from Farm Credit under an unjust enrichment theory in this lawsuit; and that Farm Credit has suffered damages from that breach at least equal to its costs in litigating this suit; the Court concludes that Farm Credit prevails on its Counterclaim against PNM and summary judgment shall be entered in Farm Credit's favor on its Counterclaim.

II.    PNM's Complaint

Farm Credit's primary argument in support of its motion for summary judgment on Counts II and V of PNM's Complaint is that PNM's claims are barred by the doctrines of setoff or recoupment. "A defendant who has a claim or right against the plaintiff may assert it in the form of a set-off of recoupment, through . . . an affirmative defense." Horton & McGehee, *Maine Civil Remedies* §4-3(d)(1) at 69 (4 ed. 2004) (citing *Inniss v. Methot Buick-Opel, Inc.*, 506 A.2d 212, 217-18 (Me. 1986)). A set-off is a demand that the defendant has against the plaintiff arising out of a transaction extrinsic to the plaintiff's cause of action. *Innis*, 506 A.2d at 217. A recoupment is a reduction of part of the plaintiff's damages because of a right in the defendant arising out of the same transaction. *Id.* Farm Credit does not specify which doctrine applies in this case, however, it is reasonably clear that what Farm Credit seeks is recoupment given that its contractual right to indemnification arose out of the payment of $100,000 to PNM. *See Developers v. Lacroix*, BCD-WB-CV-08-24, 2011 Me. Bus. & Consumer LEXIS 7, *16 n. 10 (Bus. & Consumer Ct. January

8

21, 2011, *Humphrey, C.J.*), *see also* 20 Am. Jur. 2d *Counterclaim, Recoupment, and Setoff* § 38 (2018). PNM does not address this argument directly, relying exclusively on its argument that the indemnification provision of the Waiver is unenforceable.

Here, Farm Credit pled recoupment as an affirmative defense in its answer to PNM's Complaint, thereby avoiding the principal issue in *Innis*, 506 A.2d at 217-18, *see also Cheung v. Wu*, 2007 ME 22, ¶¶ 17-21, 919 A.2d 619. Farm Credit does not cite to any authority in which a court has applied the doctrine of set-off or recoupment to bar a plaintiff's claim under the theory that any recovery under that claim would be recouped by the defendant pursuant to an indemnification agreement. Independent legal research shows that the general rule is that a defendant is entitled to recoup to the extent of the damages resulting from a breach of contract. 20 Am. Jur. 2d *Counterclaim, Recoupment, and Setoff* § 42 (2018) (citing *Smith v. Smith*, 558 A.2d 798 (Md. App. 1989)). In the absence of argument to the contrary, the Court sees no reason to treat the indemnification provision of the Waiver differently than any other contractual provision. The Court therefore concludes that because this Court has concluded that PNM has breached the Waiver, and any recovery that PNM obtains in unjust enrichment against Farm Credit would be coextensive with Farm Credit's damages for that breach, that Farm Credit is entitled to judgment as a matter of law on Count II of PNM's Complaint. Summary judgment will therefore be entered for Farm Credit on that count. This ruling obviates the necessity of the imposition of a constructive trust on the proceeds of the check issued by Pennsylvania Lumbermens Mutual Insurance Company (Count V).

## CONCLUSION

Based on the foregoing, the entry will be:

9

Defendant Farm Credit East, ACA's motion for summary judgment is GRANTED. Summary judgment is entered in favor of Defendant Farm Credit East on Count I of its Counterclaim and on Count II and Count V of Plaintiff PNM Construction, Inc.'s Complaint.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: 10/15/18

Richard Mulhern
Judge, Business and Consumer Court

10

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-2017-44 ✓

PNM CONSTRUCTION, INC. )
)
Plaintiff, )
)
v. )
)
LMJ ENTERPRISES, LLC, et al., )
)
Defendants, )
)

COMBINED ORDER ON
DEFENDANTS FARM CREDIT EAST,
ACA'S; COASTAL ENTERPRISES,
INC.'S, & EASTERN MAINE
DEVELOPMENT CORP.'S MOTIONS
TO DISMISS COUNTS II AND V OF
AMENDED COMPLAINT

This matter is before the Court on Defendants Farm Credit East, ACA's ("FCE"); Coastal

Enterprises, Inc.'s ("CEI"); and Eastern Maine Development Corporation's ("EMDC")

(collectively, the "Defendants") motions to dismiss Count II and Count V of Plaintiff PNM

Construction, Inc.'s ("PNM") Amended Complaint (the "Complaint"). PNM opposed each motion

and the Defendants replied.[1] Plaintiffs thereafter filed a surreply with no objection from the

Defendants. The Court heard oral argument on the motions on February 20, 2018, where all parties

appeared through counsel and were heard.

## BACKGROUND

This case arises out of a dispute over payment for demolition and renovations performed

by PNM to a fire-damaged property (the "Property") owned by LMJ Enterprises, LLC, ("LMJ").

(Pl's Compl. ¶¶ 9,11, 22.) The Defendants all hold mortgages on the Property. (Pl's Compl. ¶ 13.)

At oral argument, FCE claimed to hold a first-priority mortgage, while CEI and EMDC asserted

that they hold a junior mortgage. As mortgagees, the Defendants are listed as additional payees

---

[1] When these motions were being briefed and argued, EMDC's motions to set aside default and for leave to file a late answer were pending before the Court. That motion was granted by the Court by an order entered March 5, 2018.

1

under an insurance policy issued by Defendant Pennsylvania Lumberman's Mutual Insurance Company ("PLMIC"). (Pl's Compl. ¶¶ 18, 25.) The Defendants must sign off on any checks issued by PLMIC before the checks can be cashed. (Pl's Compl. ¶¶ 18-19.) The Defendants did sign one check for $100,000 over to PNM as a "progress payment." (Pl's Compl. ¶ 19.) The Defendants refused to sign over a second check that PNM claims represents the balance it is owed for its work on the Property. (Pl's Compl. ¶ 27.) At oral argument, counsel for CEI and EMDC informed the Court that they signed both checks and would consent to the proceeds of the second check being signed over to PNM. FCE, the first-priority lender, asserted that it would not consent to signing over the proceeds of the second check to PNM.

PNM has sued LMJ along with its principal Lee Haskell for breach of contract. (Pl's Compl. ¶¶ 9, 34.) In Count II of the Complaint, PNM seeks to recover from the Defendants under a theory of unjust enrichment. (Pl's Compl. ¶¶ 41-47.) Count V requests that the Court impose a constructive trust on the proceeds of a check issued by PLMIC. (Pl's Compl. ¶¶ 60-64.) PLMIC has not yet responded to this lawsuit.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* "The legal sufficiency of a

2

complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law" and thus subject to *de novo* appellate review. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

## DISCUSSION

### I. FAILURE TO PERFECT A MECHANIC'S LIEN DOES NOT PRECLUDE RECOVERY FOR UNJUST ENRICHMENT

FCE's first argument is that PNM cannot pursue unjust enrichment in equity because it failed to avail itself of its adequate remedy at law: a mechanic's lien. *See* 10 M.R.S.A. §§ 3251-3269) (FCE Mot. Dismiss 4-6.) In support of this proposition, FCE cites dicta from *Wahlocmetroflex, Inc. v. Baldwin*, 2010 ME 26, ¶ 22, 991 A.2d 44, where our Law Court was applying Delaware law.

Under Maine law, the failure by a party to perfect a mechanic's lien does not bar that party from bringing suit for unjust enrichment. *Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994); *A.F.A.B., Inc. v. Old Orchard Beach*, 610 A.2d 747, 749 (Me. 1992) ("failure to perfect a lien do[es] not bar an action for unjust enrichment").

The Defendants urge this Court to factually distinguish *A.F.A.B.* and *Aladdin Elec.* because in those cases the title owner of the improved property (the Town of Old Orchard Beach) was the defendant. But the holding of *A.F.A.B.* and *Aladdin Elec.* is as clear as it is broad: failure to perfect a mechanic's lien does not bar an action for unjust enrichment. *Id.* The distinction suggested by the Defendants is all the less important because Maine follows the title theory of mortgages. *Johnson v. McNeil*, 2002 ME 99, ¶ 10, 800 A.2d 702. "A mortgage is a conditional conveyance vesting the legal title in the mortgagee, with only the equity of redemption remaining in the mortgagor." *Id.* (quotations omitted).

This Court is bound to follow the controlling authority of *A.F.A.B.* and *Aladdin Elec.* PNM's failure to perfect a mechanic's lien on the property for which it provided services does not

3

prevent it from seeking equitable relief.

## II. PNM HAS ALLEGED THAT A BENEFIT WAS CONFERRED ON THE DEFENDANTS

The Defendants' second argument is that PNM has not pleaded all the necessary elements of an unjust enrichment claim. Unjust enrichment requires that a benefit is conferred on the defendant, the defendant has knowledge or appreciation of the benefit, and it would be inequitable under the circumstances for the defendant to accept or retain the benefit without paying for it. *Estate of White*, 521 A.2d 1180, 1183 (Me. 1987).

The Defendants argue PNM cannot allege that it conferred any benefit on them because the benefit was conferred on LMJ, and any benefit received by the Defendants was indirect. (FCE Mot. Dismiss 6.) To illustrate its point, FCE uses an analogy: Contractor contracts with Landlord to perform repairs to Apartment. Landlord fails to pay for the repairs. Contractor sues Tenant for the cost of the repairs on an unjust enrichment theory because the repairs benefitted Tenant. (*Id.*)

The analogy understates the Defendants' interest in the Property. Under Maine law, a mortgage is a conditional conveyance and legal title vests in the mortgagees. *Johnson*, 2002 ME 99, ¶ 10, 800 A.2d 702. The Tenant in the analogy by definition lacks title to Apartment. The benefit conferred on the Defendants, as alleged, may indeed be indirect, but it does not necessarily follow that PNM has failed to adequately plead unjust enrichment against the Defendants as a matter of law.

The Complaint alleges that the Defendants received a benefit when PNM repaired collateral that secured their loans to LMJ. (Pl's Compl. ¶¶ 44-46.) The Complaint further alleges that the insurance payments were compensation for the work completed by PNM, and that the creditors acknowledged the benefit PNM was conferring on them when they authorized payment to PNM from the first insurance check. (Pl's Compl. ¶¶ 19, 23.) The benefit to the Defendants, as

4

alleged, is not a mere legal fiction: any enhancement to the value of the Property would benefit FCE in the event of a foreclosure sale.[2] In sum, taken as true, and viewed in the light most favorable to PNM, the Complaint sufficiently alleges that a benefit was conferred on the Defendants.

PNM has thus stated a claim for unjust enrichment against the Defendants. The Defendants' motions to dismiss is therefore DENIED as to Count II.

III. MOTION TO DISMISS COUNT V: CONSTRUCTIVE TRUST

FCE's motion to dismiss Count V (constructive trust) is predicated on the Court granting the motion to dismiss Count II. (FCE Mot. Dismiss 7.) Because the Court denies the Defendants' motions to dismiss as to Count II, the Court also DENIES the motions to dismiss Count V.

CONCLUSION

Based on the foregoing, it is hereby ORDERED:

That Defendants FCE's, CEI's, and EMDC's motions to dismiss Count II and Count V are DENIED.

The Clerk is instructed to enter this Order on the docket by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: April 3, 2018

_____
Richard Mulhern
Judge, Business and Consumer Court

Entered on the Docket: 4-3-18
Copies sent via Mail ___ Electronically ✓

---

[2] At oral argument, it was suggested that the foreclosure sale already took place in December 2017 and that the proceeds fell far short of LMJ's outstanding debt to FCE, with counsel for FCE asserting that his client lost approximately two million dollars. The Court cannot consider this information on a motion to dismiss, which is generally limited to the facts alleged in the plaintiff's complaint. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43.

5

PNM Construction, Inc.                          **BCD-CV-2017-44**

      v.

LMJ Enterprises, LLC and Lee Haskell, & Coastal Enterprises, Inc., Farm Credit East,
ACA, Eastern Maine Development, Corp., & Pennsylvania Lumbermens Mutual Ins. Co.


## Plaintiff

PNM Construction, Inc.                          Asha Echeverria, Esq.
                                                Zachary Brandwein, Esq.
                                                *PO BOX 9729*
                                                *100 Middle St.*
                                                *Portland, ME 04104-5029*


## Defendants

LMJ Enterprises, LLC and Lee Haskell         Bruce Hochman, Esq.
                                                *PO Box 15235*
                                                *100 Middle St*
                                                *Portland, ME 04112-5235*

                                                Adria Larose, Esq.
                                                *PO Box 1210*
                                                *80 Exchange St.*
                                                *Bangor, ME, 04402-1210*

Coastal Enterprises, Inc.                       Marshal Tinkle, Esq.
                                                *PO Box 447*
                                                *15 Monument Square, 4th floor*
                                                *Portland, ME 04112*

Farm Credit East, ACA                           Kathleen Landis, Esq.
                                                Jeremy Fischer, Esq.
                                                *84 Marginal Way, Suite 600*
                                                *Portland, ME 04101-2480*

Eastern Maine Development, Corp.                Steven Blackwell, Esq.
                                                *133 Broadway*
                                                *Bangor, ME 04401*


Pennsylvania Lumbermens Mutual Ins. Co.

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-2017-44 ✓

PNM CONSTRUCTION, INC.

      Plaintiff,

v.

LMJ ENTERPRISES, LLC, et al.,

      Defendants,

)
)
)
)
)
)
)
)
)
)
)
)
)
)

COMBINED ORDER ON
DEFENDANT EASTERN MAINE
DEVELOPMENT CORPORATION'S
MOTION TO SET ASIDE DEFAULT
JUDGMENT AND FOR LEAVE TO
FILE LATE ANSWER AND
PLAINTIFF'S MOTION TO STRIKE
PORTION OF EASTERN MAINE
DEVELOPMENT CORPORATION'S
REPLY MEMORANDUM

Defendant Eastern Maine Development Corporation ("EMDC") moves this Court pursuant to M.R. Civ. P. 55(c) and 60(b)(1) to set aside the entry of default and default judgment entered by the Clerk on January 23, 2018 and for leave to file a late answer to the Complaint brought by Plaintiff PNM Construction, Inc. ("PNM"). PNM opposed the motion and EMDC timely replied. PNM subsequently moved to strike most of EMDC's reply brief pursuant to M.R. Civ. P. 7(e). The Court heard oral argument on both motions on February 20, 2018, at which both parties appeared through counsel and were heard.

**PROCEDURAL HISTORY**

This case arises out of a dispute over payment for demolition and renovations to a fire-damaged property performed by PNM. EMDC, along with three other creditor-defendants, hold mortgages on the subject property. PNM has sued LMJ Enterprises, LLC, the owner of the property, along with Mr. Lee Haskell, the principle of LMJ Enterprises, for breach of contract. PNM seeks to recover from the creditor-defendants on an unjust enrichment theory.

EMDC accepted service of the Complaint on December 28, 2017. For reasons that are

1

explained in more detail below, EMDC failed to file an answer or otherwise respond to the Complaint by the January 17, 2018 deadline for responsive pleadings. On January 19, 2018, PNM filed an affidavit and request for default and default judgment against EMDC with the Clerk of Court. *See* M.R. Civ. P. 55. The Clerk of Court entered default and issued a default judgment against EMDC on January 23, 2018.

EMDC brought the instant motion to set aside default judgment and for leave to file a late answer on January 29, 2018, after EMDC procured counsel and attempted to reach a negotiated resolution with PNM. (Def's Mot. at 3-4.) PNM opposed the motion, and EMDC timely replied. PNM subsequently moved to strike all but the final paragraph of EMDC's reply brief on the grounds that it exceeds the scope of PNM's opposition. *See* M.R. Civ. P. 7(e).

## STANDARD OF REVIEW

"For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." M.R. Civ. P. 55(c). "In order to 'establish good cause, a party must show a good excuse for his or her untimeliness and a meritorious defense.'" *Levine v. KeyBank Nat'l Ass'n*, 2004 ME 131, ¶ 13, 861 A.2d 678 (quoting *Truman v. Browne*, 2001 ME 182, ¶ 9, 788 A.2d 168). *See also* M.R. Civ. P. 60(b)(1) ("excusable neglect" proper reason to order relief from judgment).

"[T]rial courts, considering the circumstances of each case, have a broad range of discretion in considering requests for relief and remedies pursuant to Rule 60(b)." *Ezell v. Lawless*, 2008 ME 139, ¶ 19, 955 A.2d 202. On appeal, orders setting aside default pursuant to M.R. Civ. P. 55(c) and orders granting relief from judgment pursuant to M.R. Civ. P. 60(b) will be set aside "only if the failure to grant the relief works a plain and unmistakable injustice against the moving party." *Id.* (citing *Wooldridge v. Wooldridge,* 2008 ME 11, ¶ 7, 940 A.2d 1082); *Levine*, 2004 ME 131, ¶ 13,

2

861 A.2d 678.

## DISCUSSION

This Court, and Maine Courts generally, have a strong preference for deciding cases on their merits. *See* 3 Harvey& Merritt, *Maine Civil Practice* § 55:7 at 207 (3d, 2011 ed.) ("The court should be lenient in recognizing that courts exist to do justice and are reluctant to lend their processes to the enforcement of unjust judgments. Any doubt should be resolved in favor of setting aside the default so that cases may be determined on their merits." (citing *Thomas v. Thompson*, 653 A.2d 417, 420 (Me. 1995))). Nonetheless, a moving party bears the burden of showing good cause to set aside a default and order relief from a default judgment. M.R. Civ. P. 55(c). The good cause requirement has two prongs: (1) a good excuse for the default occurring and (2) a meritorious defense to the action. *Levine*, 2004 ME 131, ¶ 13, 861 A.2d 678. *See also Ezell*, 2008 ME 139, ¶ 22, 955 A.2d 202 ("To obtain relief from a default judgment under Rule 60(b)(1) for excusable neglect, a party must show (1) a reasonable excuse for her inattention to the court proceedings, and (2) a meritorious defense to the underlying action.").

## I.   EMDC'S EXCUSE IS REASONABLE

EMDC's excuse is based on two circumstances. First, EMDC's President and CEO, Michael Aube, was absent when the Summons and Complaint were served on EMDC. (Barbee Aff. ¶ 5.) Second, Kitty Barbee, the Director of Business Services and Lending at EMDC, who accepted service on behalf of EMDC in Mr. Aube's absence, mistakenly concluded that EMDC did not need to file a response because the "joint" mortgage held by EMDC and another creditor is a junior mortgage, and the debtor's liability to the first-priority mortgagee far exceeds the value of the mortgaged property. (Barbee Aff. ¶¶ 6, 8.) It is apparently typical for EMDC, as junior mortgagee, to be named as a party-in-interest when a borrower defaults, and EMDC's practice is

3

to decline to intervene in such suits where the debt to the senior mortgagee exceeds the value of the property, as was the case here. (Barbee Aff. ¶ 8.) Ms. Barbee was also cognizant of the fact that she had endorsed two insurance checks on behalf of EMDC. (Barbee Aff. ¶ 7.) Looking at the complaint, to her untrained eye, the dispute was between the senior mortgagee, PNM, and LMJ over insurance proceeds. (Def's Mot. at 5.) Ms. Barbee concluded that EMDC was a mere party-in-interest as a junior mortgagee, and consistent with EMDC's practice she declined to file an answer or seek the advice of counsel. (*Id.*)

The Court finds EMDC's mistake was reasonable under the circumstances. Ms. Barbee's conclusion that no answer was required was based on her understanding of EMDC's role as a subordinate mortgagee, her awareness of EMDC's practice, and her personal familiarity with a key detail in this case: she endorsed the insurance checks that are at issue in this case. Ms. Barbee's reasoning was sound, even if it did lead her to an erroneous conclusion. The Court is thus satisfied that EMDC has a good excuse for its inattention to these proceedings.

II.    EMDC HAS A MERITORIOUS DEFENSE

EMDC has been sued for unjust enrichment. EMDC raises two defenses in its motion; first, that PNM is not entitled to an equitable remedy of unjust enrichment because PNM failed to exhaust its remedies at law; second, that PNM conferred no benefit on EMDC. *See Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 15, 760 A.2d 1041.

These same defenses have been raised by the other creditor-defendants in motions to dismiss and will be addressed in more detail in the Court's forthcoming order on those motions. Here, the Court determines only that EMDC has a meritorious defense to the underlying action sufficient to support a finding of good cause under M.R. Civ. P. 55(c).

4

III.   PNM'S MOTION TO STRIKE

In its reply brief, EMDC for the first time raises the argument that the default judgment entered by the Clerk against EMDC is void because the amount of the judgment requested was "not for a sum certain or for a sum which can by computation made certain." M.R. Civ. P. 55(b)(1). *See Steel Serv. Ctr. v. Prince Macaroni Mfg. Co.*, 438 A.2d 881, 882 (Me. 1981) (measure of recovery under the doctrine of unjust enrichment is not a sum certain or one which can be made certain by computation). PNM moves to strike the entirety of that argument from EMDC's reply brief because it is beyond the scope of PNM's opposition. *See* M.R. Civ. P. 7(e) (reply memorandums "shall be strictly confined to replying to new matter raised in the opposing memorandum").

In light of the Court's disposition on EMDC's motion, the Court finds PNM's motion to strike is moot. The Court has determined that EMDC has shown good cause to set aside the default and demonstrated excusable neglect justifying relief from default judgment. M.R. Civ. P. 55(c), 60(b). The Court thus does not reach the issue of whether the default judgment was improperly entered and *Steel Ser. Ctr.* has no bearing on the Court's decision.

**CONCLUSION**

Based on the foregoing it is hereby ORDERED:

Defendant EMDC's motion to set aside default judgment and for leave to file late answer is GRANTED.

Plaintiff PNM's motion to strike portion of EMDC's reply memorandum is DENIED to the extent that it is moot in light of the Court's disposition on EMDC's motion.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference.

5

Dated: 3/5/18

_____
Richard Mulhern
Judge, Business and Consumer Court

Entered on the Docket: 3-5-18
Copies sent via Mail ___ Electronically ✓

6